Docket No. _____

_____

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

_____

*In re* EMC Corp. and Decho Corp.

*Petitioners*.

_____

Petition From The United States District Court
For The Eastern District Of Texas In Case No. 4:10-cv-00435-ALM
Judge Amos L. Mazzant

_____

**PETITION FOR A WRIT OF MANDAMUS**

_____

Paul T. Dacier
Krishnendu Gupta
William R. Clark
Thomas A. Brown
EMC CORPORATION
176 South Street
Hopkinton, MA 01748

Thomas M. Melsheimer
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 292-4090

Mark A. Perry
  *Principal Attorney*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
(202) 955-8500

Josh A. Krevitt
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

*Attorneys for Petitioners EMC Corporation and Decho Corporation*

# TABLE OF CONTENTS

Page

STATEMENT OF RELATED CASES ..................................................................v

PRELIMINARY STATEMENT .........................................................................1

RELIEF SOUGHT ............................................................................................4

ISSUES PRESENTED........................................................................................4

STATEMENT OF THE CASE............................................................................4

LEGAL STANDARD........................................................................................11

ARGUMENT ...................................................................................................13

I.   EMC's Right To Issuance Of The Writ Is "Clear and Indisputable."...........15

     A.   The Assignment Agreement Is Lawful. ...............................................17

     B.   The Co-Inventorship Claim Was Legitimate. ....................................20

     C.   There Was No Witness Tampering. ....................................................22

II.  The Mandamus Relief EMC Requests Is Appropriate Under The
     Circumstances....................................................................................27

III. EMC Has No Other Adequate Means Of Protecting The Privileged
     Materials Before the Merits Of The Case Are Litigated. ............................29

CONCLUSION ................................................................................................30

# TABLE OF AUTHORITIES

Page(s)

## Cases

*In re Avantel, S.A.*,
343 F.3d 311 (5th Cir. 2003) .................................................................. 28, 29

*In re Bricam Am. LLC Equip. Lease Litig.*,
977 F. Supp. 2d 1287 (S.D. Fla. 2013) ......................................................25

*Cheney v. Dist. Court for Dist. of Columbia*,
542 U.S. 367 (2004)...................................................................... 11, 29

*D&D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*,
Civ. No. 03-1026, 2011 WL 1871110 (D.N.J. May 13, 2011) ....................16

*In re EchoStar Commc'ns*,
448 F.3d 1294 (Fed. Cir. 2006) ....................................................................27

*ESN, LLC v. Cisco Sys., Inc.*,
685 F. Supp. 2d 631 (E.D. Tex. 2009) ..........................................................19

*Gasperini v. Ctr. for Humanities, Inc.*,
518 U.S. 415 (1996)........................................................................................20

*In re Grand Jury Subpoena*,
419 F.3d 329 (5th Cir. 2005) ...................................................... 2, 13, 15, 16

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
701 F.3d 1351 (Fed. Cir. 2012) ....................................................................12

*Koon v. United States*,
518 U.S. 81 (1996).........................................................................................12

*In re Liprie*,
480 B.R. 658 (Bankr. W.D. La. 2012) ..........................................................16

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009)............................................................................ *passim*

*Newport Ltd. v. Sears, Roebuck & Co.*,
Civ. No. 86-2319, 1995 WL 295297 (E.D. La. May 11, 1995) ...................16

*In re Pioneer Hi-Bred Int'l, Inc.*,
238 F.3d 1370 (Fed. Cir. 2001) ....................................................................27

*In re Princo Corp.*,
478 F.3d 1345 (Fed. Cir. 2007) ....................................................................29

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

*SEC v. Rajaratnam*,
    622 F.3d 159 (2d Cir. 2010) ....................................................................27

*Shelton v. Am. Motors Corp.*,
    805 F.2d 1323 (8th Cir. 1986) ................................................................29

*In re Spalding Sports Worldwide, Inc.*,
    203 F.3d 800 (Fed. Cir. 2000) ................................................. 12, 17, 27

*United States v. Bauer*,
    132 F.3d 504 (9th Cir. 1997) ..................................................................28

*United States v. Kloess*,
    251 F.3d 941 (11th Cir. 2001) ................................................................22

*United States v. Weiss*,
    630 F.3d 1263 (10th Cir. 2010) ..............................................................24

*In re United States*,
    669 F.3d 1333 (Fed. Cir. 2012) ..............................................................28

*Ward v. Succession of Freeman*,
    854 F.2d 780 (5th Cir. 1988) ....................................................................3

### Statutes

18 U.S.C. § 1512 ...................................................................... 9, 22, 24

18 U.S.C. § 1515 .................................................................... 22, 23, 25

18 U.S.C. § 201 ........................................................................ 9, 18, 19

28 U.S.C. § 1292(b) ........................................................................11

### Rules

Fed. R. Civ. P. 11 ...........................................................................22

Fed. R. Civ. P. 45 ...........................................................................24

## STATEMENT REGARDING SEALING

Material highlighted in the sealed version of this filing has been redacted

from the public version pursuant to the protective order in the case below.  *See*

Dkt. 315.

## STATEMENT OF RELATED CASES

Oasis has sued numerous companies in the Eastern District of Texas on a single family of patents. In the case underlying this petition, Case No. 4:10-cv-00435-ALM, defendants have included the petitioner EMC; Adrive, LLC; AT&T, Inc.; Carbonite, Inc.; Drive Headquarters, Inc.; Iomega Corp.; Godaddy.Com, Inc.; Iron Mountain, Inc.; Iron Mountain Information Management, Inc.; NetMass, Inc.; Nirvanix, Inc.; Officeware Corp.; Pro Softnet Corp.; Rackspace Hosting, Inc.; Jungle Disk, LLC; Softlayer Technologies, Inc.; and SBC Internet Services, Inc.

On September 8, 2011, EMC petitioned this Court for a writ of mandamus directing the district court to reconsider certain severance and transfer motions. *See In re EMC Corporation, Decho Corporation, and Iomega Corporation*, 2011-M100, 677 F.3d 1351 (Fed. Cir. 2012). That petition was granted by a panel of this Court comprised of Judges Rader, Dyk, and Moore. *Id*.

On October 16, 2012, EMC petitioned this Court for a writ of mandamus directing the district court to grant its motion to transfer venue. That petition was denied by a panel of this Court comprised of Judges Rader, Dyk, and Moore. *In re EMC Corporation, Decho Corporation, Iomega Corporation, and Carbonite, Inc.*, 2013-M142, 501 F. App'x 973 (Fed. Cir. 2013).

# PRELIMINARY STATEMENT

The United States District Court for the Eastern District of Texas has ordered EMC Corporation and Decho Corporation (collectively, "EMC") to produce more than 300 documents relating to EMC's investigation of an omitted co-inventor defense that are indisputably covered by the attorney-client privilege and work-product doctrine. *See* Dkt. 968.[1] The court agreed with plaintiff Oasis Research LLC ("Oasis") that these documents are discoverable under the "crime-fraud" exception, even though the court made no finding that EMC engaged in any criminal or fraudulent activity or that any of the documents the court reviewed was prepared in furtherance of such activity. *See id.* This "particularly injurious" and "novel" ruling eviscerating EMC's privilege warrants the extraordinary relief of a writ of mandamus. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009).

The district court has acknowledged that it "did not rely on any particular action or any singular act to justify its application of the crime-fraud exception." Dkt. 999, at 9. That approach alone warrants review, and reversal, because Oasis was required to make a prima facie showing that (1) a crime or fraud has been committed by EMC, and (2) the privileged materials are related to the furtherance of that crime or fraud. *In re Grand Jury Subpoena*, 419 F.3d 329, 336-37 (5th Cir.

---

[1] All documents cited in this petition are appended hereto as exhibits. Documents filed on the record in the case below, *Oasis v. EMC et al.*, 4:10-CV-00435-ALM (E.D. Tex.), will be cited by docket number (*i.e.*, "Dkt. XX") where possible. Some of those documents were filed under seal.

2005).  Oasis made neither showing, and the district court identified nothing that could satisfy either prong.  That is because there is no such evidence in this record.

The present dispute arises out of Oasis's scurrilous charge that EMC "bought" the testimony of witnesses in connection with a previous trial regarding the inventorship of the patent-in-suit.  In support of this accusation, Oasis points to nothing other than the ordinary incidents of patent litigation—such as a fully dis- closed assignment agreement, with a cooperation clause, between the co-inventors and EMC.  Oasis now maintains that this routine litigation conduct is a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and that for the same reason the crime-fraud exception applies.

Oasis's position contradicts this Court's authority recognizing that assign- ment agreements like the one in this case are lawful.  *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1465 (Fed. Cir. 1998).  If the agreement is lawful, then EMC's conduct pursuant to it cannot have been a "crime" or a "fraud" as a matter of law, and the crime-fraud exception could not apply.  Litigants such as EMC are entitled to rely on this Court's decisions in structuring their contracts.  The district court failed to apprehend this fundamental point, ruling that "*Ethicon* does not per- tain to the crime-fraud exception of the attorney-client privilege."  Dkt. 1000, at 8. By ordering EMC to produce privileged documents on the basis of conduct that is lawful under Circuit precedent, the district court committed legal error requiring

2

correction.

This mandamus petition does not require the Court to review any factual findings for clear error, because the district court made no such findings. Nor does this petition require the Court to determine whether the district court appropriately exercised its discretion to order production of privileged documents after a prima facie showing that the elements of the crime-fraud exception were met, because Oasis made no such showing. Rather, this petition presents the purely legal question whether the district court exceeded its authority in ordering production of privileged documents based on conduct that is not, as a matter of law, either "criminal" or "fraudulent," but rather consists entirely of routine litigation activity. Since that question can only be answered in the affirmative, the district court's production order warrants correction by writ of mandamus. *See Mohawk*, 558 U.S. at 110-11.[2]

---

[2]     The same errors that are fatal to the production order (Dkt. 968) also infect the earlier order requiring EMC to produce privileged documents for *in camera* inspection (Dkt. 898). *See Ward v. Succession of Freeman*, 854 F.2d 780, 790 (5th Cir. 1988) (requiring "independent" prima facie case). Even assuming, *arguendo*, that the district court had discretion to *review* the documents *in camera*, it was legal error for the district court to *order their production* following that review since not one of those documents supports Oasis's allegations of criminal or fraudulent conduct—as the district court's orders confirm by not relying on any of them to support the production order. Accordingly, EMC seeks appellate review only of the production order on the ground that the predicates for the crime-fraud exception were not established as a matter of law on this record. Should this Court nonetheless wish to review the documents provided to the district court *in camera*, EMC will of course provide them forthwith pursuant to the procedures of Federal Circuit Rule 47.8.

## RELIEF SOUGHT

EMC respectfully requests that this Court issue a writ of mandamus directing the district court to vacate its order compelling the production of privileged documents (Dkt. 968) and enter an order denying Oasis's motion to compel.

## ISSUES PRESENTED

1.    Whether the district court erred as a matter of law in ordering the production of privileged documents under the crime-fraud exception where the predicate conduct is not as a matter of law either criminal or fraudulent; and

2.    Whether mandamus is appropriate in light of the important public interests at stake and the irreparable harm EMC will suffer if the privileged documents are disclosed to its litigation adversary.

## STATEMENT OF THE CASE

Oasis, the plaintiff below, filed the underlying patent infringement action against EMC and numerous other defendants in the Eastern District of Texas on August 30, 2010.  Dkt. 1.  Oasis alleged infringement of four related patents (U.S. Patent Nos. 5,771,354; 5,901,228; 6,411,943; and 7,080,051) that generally relate to remote data storage and the online backup of personal computers.  *Id.* ¶ 15.

Chris Crawford, the named inventor on the patents-in-suit, was part of a group including Don Atwood, Jack Byrd, and Chuk Campos that had collaborated in exploring a commercial service for the remote backup of data. Dkt. 966, at 4.  In early 1992, the four men met on multiple occasions to develop

4

technical ideas and a possible business model, calling themselves the "PC Oasis Group." *Id*. Their collaboration is evidenced by contemporaneous documents including, among others, a May 23, 1992, document written by Crawford that referred to "*Jack Byrd's* idea to provide automated off-site backup services for PC users" (emphasis added), and a Business Strategy document also written by Crawford that referred to "the determination of principles [*sic*] Don Atwood, Jack Byrd, Chuk Campos and myself to create a company to provide automated backup and recovery services for PC users." *Id*.

However, Crawford identified himself as the sole inventor when he filed his applications for the patents-in-suit—which cover, *inter alia*, commercial services for the remote backup of data. Dkt. 966, at 5. Crawford never informed Messrs. Campos, Atwood, or Byrd that he had filed patent applications in his name alone, nor that the patents had issued. *Id.*

In the course of investigating inventorship issues, EMC learned of the PC Oasis group and the members' joint efforts on remote backup services. Dkt. 966, at 5. Defense counsel investigated the possibility of co-inventorship and potential defenses based on Crawford's failure to identify Messrs. Atwood, Byrd, and Campos as co-inventors on his patent applications. *Id.* At EMC's request, Mr. Campos searched for and found documents evidencing the collaboration. *Id.* at 6.

After learning of the patents, Campos and Atwood, and Teri Todd (Jack Byrd's widow) sought legal representation. Dkt. 966, at 6. Beginning as early as April 20, 2012, and at all relevant times thereafter, Atwood, Campos, and Todd were represented by their own counsel, Ronald Finley and Justin Beck, in all of their dealings with Oasis, EMC, and their respective counsel. *Id.* Finley and Beck undertook an investigation to determine if their clients had rights as co-inventors.

On May 4, 2012, EMC and other Defendants made an offer, communicated to Finley, to take a license to whatever rights Campos, Atwood, and Todd possessed in the patents-in-suit in exchange for a payment of $75,000. Dkt. 966, at 7. The offer was conditioned on Defendants' review of the Campos documents, an interview of Campos and Atwood, and cooperation from Campos, Atwood, and Todd in proving their co-inventorship claims. *Id.* Finley rejected the offer on his clients' behalf, stating that they were interested in selling their rights, not licensing them, and that the $75,000 offer was too small. *Id.*

On May 15, 2012, Finley produced to both Oasis and Defendants the documents Campos had retrieved from storage relating to the activities of the PC Oasis Group in 1992. Dkt. 966, at 8. The production was made nearly simultaneously to both parties to ensure that both sides had equal access to the information. *Id.*

Prior to their 2012 depositions, Finley also offered to both Oasis and Defendants an opportunity to interview Campos and Atwood about their knowledge of the origin of the ideas claimed in the patents-in-suit. Oasis declined; Defendants accepted. Dkt. 966, at 8. Defense counsel, with co-inventors' counsel present, interviewed Campos and Atwood on May 30, 2012. *Id.*

Atwood and Campos were deposed in June 2012. Both testified that many of the ideas claimed in the patents-in-suit originated with Byrd, Campos, and/or Atwood. Dkt. 966, at 8. Todd was deposed on July 2, 2012. She testified that Byrd and Atwood worked on an idea for a commercial data backup service when Byrd and Atwood worked together in a computer consulting business in 1989–90. *Id.* at 9. At each of their depositions, Atwood, Campos, and Todd were represented by and advised by independent counsel, Finley and/or Beck. *Id.*

After deposing the key witnesses and reviewing the contemporaneous documentation, four Defendants—EMC, Carbonite, Autonomy, Inc., and Pro SoftNet, Inc.—entered into an Assignment Agreement under which Campos, Atwood, and Todd assigned to the Defendants any rights they had in the patents-in-suit, effec-

tive August 30, 2012.  Dkt. 966, at 9.

During the course of drafting and negotiating the Assignment Agreement, the co-inventors' counsel represented them in making revisions regarding the agreement's substance and terms.  Dkt. 966, at 9.  The Agreement contained the following relevant provisions:



*Id.* at 10; Ex. 2, at ¶¶ 1-4.

All payments EMC made to or on behalf of Campos, Atwood, and Todd, including payments to their attorneys, were made pursuant to the Assignment Agreement, which was executed only after Campos, Atwood, and Todd had already testified under oath regarding the inventorship issue.  Dkt. 966, at 10-11.

On September 24, 2012, Oasis filed an additional claim in the patent suit, this time alleging that Defendants had violated RICO.  Dkt. 462.  Among other things, Oasis alleged that the payments made to Campos, Atwood, and Todd pursuant to the Assignment Agreement, and the $75,000 Defendants offered on May 4, 2012 for license rights, were illegal "bribes" and "payments for testimony," and that Defendants engaged in "witness tampering" and unlawfully persuaded Campos, Atwood, and Todd to testify, all in violation of 18 U.S.C. § 201 and § 1512. *Id.* ¶¶ 52–57.

The inventorship issue was tried to a jury on March 14–22, 2013.  Dkt. 725–730.  Campos, Atwood, and Todd each testified live, and many of the documents from Campos's "Oasis" file were admitted into evidence.  Dkt. 966, at 12.  During the trial, Oasis's counsel presented to the jury the facts forming the basis for its theory that Defendants had bribed or otherwise improperly influenced the testimony of Atwood, Campos, and Todd.  Throughout the trial, Oasis argued that the jury should discount the credibility of the defense witnesses, reject their testimony as a fabrication, and find that Crawford was the sole inventor.  *Id.*  The jury, however, disagreed, and on March 22, 2013, returned a verdict rejecting Crawford's claim and finding that Jack Byrd was an omitted co-inventor.  Dkt. 718.  Almost two years later, on January 8, 2015, the district court set aside the jury's verdict on the ground that the legal requirements of corroboration and the "clear and convincing

evidence" standard were not met so as to overcome the presumption of validity. Dkt. 747, at 20. The court did not, however, question the jury's assessment of the witnesses' credibility or other evidence.

To date, the inventorship trial and subsequent discovery in the RICO case have generated 1833 pages of trial transcript, 5139 pages of deposition testimony in 16 separate depositions, and over 9600 pages of documents produced by Defendants, Defendants' counsel, the co-inventors, and their counsel. Dkt. 966, at 13-14. Atwood, Campos, and Todd have each been deposed twice. *Id.* at 14. Their attorneys, as well as EMC's attorneys, have also been deposed. *Id.* Still, Oasis has not identified a single falsified document or specific example of a knowingly false statement made under oath. *Id.*

On April 13, 2015, the district court entered a new schedule governing the remaining claims and defenses in the case. Dkt. 752. Trial in the RICO case is scheduled to begin on October 26, 2015, and trial on the patent case against EMC is scheduled to begin on January 4, 2016. Dkt. 817, at 7; Dkt. 834.

On June 23, 2015, Oasis moved to compel EMC to produce privileged attorney-client communications related to its inventorship defense, relying on Oasis's RICO allegations as a basis to support application of the crime-fraud exception. Dkt. 823. Defendants opposed the motion because the RICO allegations were based only on routine litigation activities undertaken pursuant to an assignment

agreement that under Federal Circuit precedent is lawful in the patent context. Dkt. 840. On July 22, 2015, the district court ordered *in camera* review of the privileged documents. Dkt. 898.

On August 28, 2015, the district court ordered the production of 357 privileged documents under the crime-fraud exception, holding, without analysis or explanation, that the documents should be produced pursuant to the crime-fraud exception. Dkt. 968. On September 11, 2015, the district court entered two additional orders—one denying EMC's motion for a stay and the other denying EMC's request for certification under 28 U.S.C. § 1292(b)—in which the court attempted to explain its production order but still failed to identify any criminal or fraudulent conduct by EMC, or any evidence that the documents at issue were developed in furtherance of any such conduct. Dkts. 999 & 1000.

## LEGAL STANDARD

Mandamus relief is warranted where: (1) the petitioner's "right to issuance of the writ is clear and indisputable"; (2) there is "no other adequate means to attain the relief [the petitioner] desires"; and (3) the "writ is appropriate under the circumstances." *Cheney v. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380-81 (2004) (quotation marks omitted). The Supreme Court has squarely held that mandamus is the appropriate vehicle for securing interlocutory review of orders requiring the production of documents that raise "novel" and "injurious" issues of

attorney-client privilege. *See Mohawk*, 558 U.S. at 110-11. The production order here, which rests on the "crime-fraud" exception even though neither Oasis nor the district court has ever identified even a single act by EMC that is actionably "criminal" or "fraudulent" as a matter of law, is precisely the kind of order that the Supreme Court has indicated is eligible for interlocutory review.

The applicability of the crime-fraud exception here involves a patent assignment agreement, and Federal Circuit law applies to the extent this petition implicates substantive patent law. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803-04 (Fed. Cir. 2000). Fifth Circuit law applies to generally applicable privilege issues, including the standard for the crime-fraud exception. *See id.*

Although mandamus review is typically limited to determining whether the district court abused its discretion, the production order is predicated on a misapprehension (or misapplication) of the law, and therefore a *de novo* determination of the legal issues is appropriate here. *See Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 701 F.3d 1351, 1354 (Fed. Cir. 2012). Even if the standard is abuse of discretion, "a district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996). The district court's production order, as explicated in its subsequent orders, is shot through with legal error and warrants no appellate deference.

## ARGUMENT

This Court need look no further than the district court's own defense of its order to see the error in requiring EMC to produce privileged documents: "Because [Oasis] is *alleging* that [EMC] bought the testimony of the alleged co-inventors …, it is *necessary* that [Oasis] obtain documents and communications that could be privileged under the attorney-client privilege to demonstrate *whether* the *alleged* misconduct took place." Dkt. 1000, at 11-12 (emphases added). That is not the standard for invoking the crime-fraud exception, nor could it be—if so, mere allegations would be sufficient to breach the privilege in every case.[3]

The crime-fraud exception applies *only* where the movant has made a prima facie showing that (1) a crime or fraud has been committed, and (2) the privileged materials are related to the furtherance of that crime or fraud. *In re Grand Jury Subpoena*, 419 F.3d at 337. Oasis's "alleg[ation]" that EMC "bought" the co-inventors' testimony is not sufficient to carry its burden under the crime-fraud exception, as the district court erroneously concluded. Rather, Oasis was required to come forward with a prima facie case—*i.e.*, evidence of specific conduct by EMC that was actionably criminal or fraudulent, as well as evidence that the privileged

---

[3] The district court did not make *any* factual findings to support its ruling, instead simply reciting Oasis's allegations and characterizations. *See* Dkt. 999, at 1-3; Dkt. 1000, at 1-3. The court did not find, nor could it, that any of these alleged actions constituted a crime or fraud by EMC, or that any of the 357 documents were prepared in furtherance of any such activity. Rather, the district court's production order appears to rest entirely on Oasis's *allegations*, as the court itself said.

communications were related to the furtherance of that specific misconduct. Oasis never made any such showing—as confirmed by the absence of any findings on the predicate factors in any of the *four* orders that the district court has issued on this subject. *See* Dkts. 898, 968, 999, 1000.

The district court has acknowledged that it "did not rely on any particular action or any singular act to justify its application of the crime-fraud exception." Dkt. 999, at 9. Nor could it, because Oasis has not identified any action or act by EMC that is criminal or fraudulent. Yet, instead of denying the motion to compel, the district court said that it ordered the production based on "the totality of Defendants' actions." *Id.* Given that each and every action identified by Oasis was lawful, the "totality" of those actions cannot be unlawful. The totality of EMC's conduct is the sum of its parts; since every part was lawful, so too was the whole. The district court erred as a matter of law in concluding otherwise.

Moreover, the district court's conclusion ignores this Court's precedent by expressly refusing to apply *Ethicon*, which makes clear that such an assignment agreement (and, thus, EMC's conduct taken pursuant to it) is lawful. Dkt. 999, at 10-11 n.1; Dkt. 1000, at 8. *Ethicon* precludes a prima facie showing that EMC engaged in criminal or fraudulent conduct, and the crime-fraud exception does not apply as a matter of law. Indeed, because every act complained of by Oasis was lawful, the requisite showing for the crime-fraud exception could not be (and was

14

not) made.  Although the district court complained that EMC is "attempting to appeal the ultimate issue of the RICO case—whether [its] conduct was permissible or fraudulent" (Dkt. 1000, at 8), what is at issue here is Oasis's failure to establish the prerequisites to the crime-fraud exception.  The district court's failure to examine this fundamental point under this Court's controlling precedent in *Ethicon* is legal error of the first order.

## I.    EMC's Right To Issuance Of The Writ Is "Clear and Indisputable."

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quotation marks omitted).  A court can pierce the privilege and order production of protected documents only in rare and extraordinary circumstances, including (as relevant here) where the documents in issue were "made for the purpose of getting advice for the commission of a fraud or crime." *Id.* at 563 (quotation marks omitted).

The scope of the "crime-fraud" exception to attorney-client privilege is exceedingly narrow, requiring Oasis to make a prima facie showing that (1) EMC committed a crime or a fraud, *and* (2) the requested communications were made in furtherance of that crime or fraud.  *See In re Grand Jury Subpoena*, 419 F.3d at 337.  Oasis has failed to make either showing here, and EMC is entitled to a writ of mandamus directing the district court to vacate its production order.

15

In the court below, Oasis relied on the district court's denial of EMC's request for summary judgment on Oasis's RICO claim, improperly equating that ruling with the establishment of a prima facie case of crime or fraud sufficient to vitiate privilege. But the standards are markedly different: The summary judgment ruling established only that there was a genuine issue of material fact, whereas to prevail on its motion to compel Oasis was required to establish a prima facie case that EMC engaged in criminal or fraudulent conduct. *See*, *e.g.*, *D&D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, Civ. No. 03-1026, 2011 WL 1871110, at *15 (D.N.J. May 13, 2011) (denial of summary judgment on intentional interference claim not sufficient for waiver of privilege); *Newport Ltd. v. Sears, Roebuck & Co.*, Civ. No. 86-2319, 1995 WL 295297, at *1 (E.D. La. May 11, 1995) (despite plaintiff's defeat of summary judgment motion, "the Court is not convinced that [it] has presented sufficient evidence of fraud to trigger this narrow exception").

Furthermore, Oasis failed to establish that any of the communications that are the subject of the disclosure order are "reasonably related to the furthering of a continuing crime or fraud." *See In re Liprie*, 480 B.R. 658, 668 (Bankr. W.D. La. 2012) (denying motion to compel where movant made "sweeping claim" that all privileged documents were subject to crime-fraud exception "without making any showing how specific documents or categories of documents [furthered] alleged fraudulent conduct"); *see also In re Grand Jury Subpoena*, 419 F.3d at 337 (privi-

leged materials must be reasonably related to furtherance of continuing crime or fraud); *Spalding*, 203 F.3d at 807 (same).  In fact, Oasis completely failed to tailor its request for communications, instead sweepingly seeking all privileged communications and documents related to inventorship, third parties, and any potential causes of action against not only Oasis but also against third parties.  Dkt. 823-1.

The district court's *four* orders do not identify a single criminal or fraudulent act committed by EMC, and the district court has recently acknowledged that it "did not rely on any particular action or any singular act to justify its application of the crime-fraud exception."  Dkt. 999, at 9.  That is because *every* "particular action" and "singular act" identified by Oasis is entirely *lawful*.

In the court below, Oasis challenged three aspects of EMC's litigation conduct as predicate acts under RICO:  The Assignment Agreement itself, the supposed "manufacturing" of a co-inventorship claim, and alleged "tampering" with the co-inventor witnesses.  As explained below, none could remotely be characterized as either "criminal" or "fraudulent."  As a result, the crime-fraud exception does not apply as a matter of law.

## A.    The Assignment Agreement Is Lawful.

Oasis's principal argument in the district court was that the Assignment Agreement between EMC (and other Defendants) and the co-inventors was evidence of a RICO violation and supports the application of the crime-fraud excep-

tion to the privileged documents. *See* Dkt. 823, at 2. As a matter of law, this allegation fails because an assignment of patent rights with a requirement to cooperate in asserting those rights by testifying in court does not violate 18 U.S.C. § 201(c)(2)'s prohibition on payment "for or because of" testimony. Indeed, this Court has unambiguously held that such an agreement is lawful on its face. *See Ethicon*, 135 F.3d at 1466 (interpretation of license agreements is question of law).

In *Ethicon*, this Court approved an agreement by which an allegedly omitted co-inventor sold an exclusive license to a patent litigation defendant and agreed to testify in a proceeding "to correct the inventorship," in return for an upfront payment of $300,000 plus further payments of up to $100,000 a year for 10 years contingent on the defendant's success in the lawsuit. 135 F.3d at 1465; *see* Ex. 1 (Ethicon agreement ¶¶ 3-4). Noting that such cooperation requirements are "very common" in patent license agreements and "simply assure[] the licensee that it will be able to defend the property in which it has purchased an interest," this Court specifically held that "these license agreement terms do not constitute payment for testimony as a fact witness." *See Ethicon*, 135 F.3d at 1465–66. The Assignment Agreement in this case—and EMC's conduct pursuant to it—leads to the same result as in *Ethicon*. In fact, the agreement in this case should cause even less concern than the one in *Ethicon* because unlike the *Ethicon* agreement, the assignment agreement at issue here contains no provision for any payment that is contingent on

the outcome of the patent suit. *See id.* at 1465; Ex. 1 ¶¶ 3-4.

*Ethicon* destroys any argument that payments made pursuant to the Assignment Agreement are evidence of a crime or fraud. *Ethicon* makes clear that compensation for rights of purported co-inventors is permissible, even commonplace, activity in patent disputes. And although Oasis suggested below that payments for legal expenses or travel expenses also constitute bribery, Dkt. 823, at 7-8, that is legally erroneous in this context. The anti-bribery statute expressly permits reimbursement of witnesses' travel expenses, *see* 18 U.S.C. § 201(d), and the reimbursement of legal fees was a bargained-for provision in the Assignment Agreement and was thus lawful. *See ESN, LLC v. Cisco Sys., Inc.*, 685 F. Supp. 2d 631, 638, 647 (E.D. Tex. 2009) (applying *Ethicon* to agreement that included attorneys' fees provision); *see* Ex. 2 ¶ 4.

The district court refused to apply *Ethicon*, ruling most recently that "*Ethicon* does not pertain to the crime-fraud exception of the attorney-client privilege." Dkt. 1000, at 8. The district court thereby pointed to its own legal error: Since the Assignment Agreement is lawful—as *Ethicon* holds—then conduct undertaken pursuant to it cannot as a matter of law be "criminal" or "fraudulent" or support the application of the crime-fraud exception. The district court's refusal to apply *Ethicon* is sufficient in itself to reverse the production order. In light of the unambiguously lawful nature of the Assignment Agreement and the payments made pursuant

to that agreement, and in light of the routine use of these agreements in patent pro-

ceedings, a writ of mandamus is "clear[ly] and indisputab[ly]" appropriate.

## B.    The Co-Inventorship Claim Was Legitimate.

Oasis maintained below that Mr. Atwood, Mr. Campos, and Ms. Todd man-

ufactured a co-inventorship story in response to Defendants' alleged bribes and in-

timidation.  *See* Dkt. 823, at 5.  Oasis has identified no evidence to support that al-

legation.  To accept that allegation as true would require believing that Mr. At-

wood, Mr. Campos, and Ms. Todd lied under oath when they described their con-

tributions and those of Mr. Byrd to the patents-in-suit; and that the contemporane-

ous documents retrieved by Campos were inauthentic.  Yet the jury clearly credited

that testimony and documentary evidence when it determined that Mr. Crawford

was not the sole inventor.[4]

Oasis put heavy reliance on an isolated misstatement—later clarified—in

Mr. Atwood's June 7, 2012, deposition.  *See* Dkt. 823, at 5.  Understandably fa-

tigued during nine-and-a-half hours of testimony, Mr. Atwood misunderstood a

question being posed and inaccurately stated that he had been offered payment for

---

[4]    Indeed, the jury at the conclusion of the inventorship trial *accepted* EMC's position and returned a verdict finding as a factual matter that persons other than Mr. Crawford contributed to the invention.  Dkt. 718.  Although that verdict was vacated for reasons unrelated to Oasis's allegations of misconduct (Dkt. 747), the Seventh Amendment's Reexamination Clause prohibits the district court (or this Court) from revisiting that question and thus independently bars Oasis's allega-tions of wrongdoing based on the inventorship issue.  *Cf. Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 431-32 (1996).

his testimony.  *See* Ex. 7 (Atwood Trial Tr. 840:1-18) ("█████████████ ████████████████████████████████████").  Mr. Atwood also testified that although he expected "███████████████████████," he did not "██ █████████████████████████████████████████████████████."  *See* Ex. 8 (Atwood Depo Tr. 234:17-22).  He clarified that he was "█████████ ████████████" but "███████████████████████████████████," *id.* at 256:13-23, and his testimony was corroborated by the other co-inventors.  *See* Ex. 10 (Campos Depo Tr. 381:24-382:13); Ex. 14 (Todd Tr. 165:12-22).  The district court itself originally characterized the initial misstatement as an "honest mistake on the part of the witness" and concluded that "he wasn't being paid for his testimony versus the other."  *See* Ex. 15 (Pretrial Tr. at 95:25-96:3).

Moreover, the contemporaneous documentary evidence unequivocally demonstrates the validity of the co-inventorship theory:



*See also* Dkt. 840, at 6 (discussing contemporaneous references to ideas in the patents-in-suit).  Indeed, one of the tasks the co-inventors documented was to "secure

patents." *Id.* at 5.  This contemporaneous evidence was also corroborated by a non-interested witness, Donald Doss, whom Oasis has never claimed Defendants paid or attempted to pay improperly.  Dkt 966, at 8.  The evidence underscores that the Assignment Agreement and the co-inventors' testimony reflect a legitimate challenge to Crawford's claim of sole inventorship and are not evidence of a crime or fraud that would vitiate the attorney-client privilege.

## C.    There Was No Witness Tampering.

Oasis also argued that EMC's litigation activities amounted to "witness tampering" in violation of a federal criminal statute.  *See* 18 U.S.C. § 1512(b).  As with its other arguments, however, Oasis has no evidentiary support.

Indeed, the conduct challenged by Oasis is all protected by the statutory safe harbor for bona fide legal services and cannot serve as the basis for vitiating the attorney-client privilege.  The witness tampering statute expressly excludes from the scope of criminal misconduct, "lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding."  18 U.S.C. § 1515(c).  The safe harbor afforded by Section 1515(c) "provides a complete defense to the statute because one who is performing bona fide legal representation does not have an improper purpose.  His purpose—to zealously represent his client—is fully protected by the law."  *United States v. Kloess*, 251 F.3d 941, 948 (11th Cir. 2001).

EMC's counsel had a duty under Federal Rule of Civil Procedure 11(b) to

conduct a reasonable inquiry into the factual and legal basis for possible co-inventorship before pursuing an inventorship defense. This duty (along with the ethical duty of zealous representation) necessarily required counsel to interview Messrs. Campos and Atwood and to ask them questions designed to ascertain whether they met the legal standard for inventorship. Thus, Oasis's contention that EMC's attorneys committed witness tampering by describing the legal standard for inventorship to Mr. Campos fails as a matter of law. *See* Ex. 6, Oasis Interrog. Resp. 26, p.11. Their conversation was an essential part of the "bona fide, legal representation" the attorneys were providing for EMC. *See* 18 U.S.C. § 1515(c). That the co-inventors initially may not have seen themselves as "inventors" is irrelevant, since they were not lawyers and were unsophisticated in matters of patent law. *See* Ex. 12, Finley Dep. 113:17–114:8.

Furthermore, neither criminal nor civil liability can be predicated on the provision of accurate information to a witness. Both Messrs. Campos and Ottenweller gave testimony to the effect that EMC counsel accurately explained the legal standard for inventor status (*i.e.* significant contribution to the invention). Ex. 13, Ottenweller Dep. 71:5–12; Ex. 11, Campos 2015 Dep.73:18–74:6. In all of these respects, EMC's initial communications with the co-inventors were proper.

Oasis complained that EMC "badgered" Mr. Campos by repeatedly asking him to search for documents relating to his collaboration with Crawford, rather

than serving a subpoena that legally commanded him to search for and produce those documents. Oasis's purported evidence of a criminal "threat" is that EMC informed Mr. Campos that he could be subpoenaed for a deposition. *See* Dkt. 823, at 6. A "threat" to issue a lawful subpoena is not a criminal threat, and Oasis can point to no contrary case law. EMC's counsel had the legal right under Federal Rule of Civil Procedure 45 (and indeed an ethical obligation to their client) to use the subpoena power, if necessary, to compel the co-inventors to produce their documents and testify, because those documents and testimony were relevant to EMC's defense. A subpoena is coercive on its face, threatening contempt of court for non-compliance. *See* Fed. R. Civ. P. 45(g).

A lawful act does not become criminal simply because it makes someone uncomfortable. Even assuming Mr. Campos felt "badgered" to provide what EMC had a legal right to demand, such feelings are plainly insufficient to establish a violation of 18 U.S.C. § 1512 *by EMC* as a matter of law. *See United States v. Weiss*, 630 F.3d 1263, 1273 (10th Cir. 2010) (must establish intent of person allegedly interfering with witnesses). The subjective reactions of co-inventor witnesses say nothing about *EMC*'s intent in defending against patent infringement allegations.

It is not unlawful to seek a witness's voluntary cooperation before resorting to a subpoena. Indeed, Rule 45(d)(1) imposes a duty on parties and counsel to take "reasonable steps to avoid imposing undue burden or expense" on third-party wit-

nesses. Oasis would have this Court find that "asking nicely" before serving legal process is a federal crime. Any such reading of the statute is absurd, and the effort of EMC's counsel to obtain voluntary cooperation of witnesses is plainly a "lawful, bona fide, legal representation service" that is excluded from the definition of witness tampering and cannot justify vitiating privilege. *See* 18 U.S.C. § 1515(c).

Oasis also pointed to defense counsel's telephone interview of Campos and Atwood (arranged by the co-inventors' attorneys) and communications informing a third-party witness of the opportunity to make corrections to a deposition transcript olas purported evidence of fraud. Dkt. 823, at 7-8. But interviewing witnesses, meeting with them to prepare for deposition or trial testimony, and working with them after a deposition to correct the transcript, are "lawful, bona fide, legal representation services" falling squarely within § 1515(c)'s safe harbor and therefore cannot be witness tampering as a matter of law. *Cf. In re Bricam Am. LLC Equip. Lease Litig.*, 977 F. Supp. 2d 1287, 1295 (S.D. Fla. 2013).

Finally, Oasis accused EMC's counsel of witness tampering because they did *not* explain to the co-inventors the legal consequences of a finding of invalidity. Ex. 6, Oasis Interrog. Resp. 26, at p. 22. It is unclear how failing to explain to a person (who is not one's client) the legal effect of a potential course of conduct is a violation of criminal or civil law. This is especially true here, where the co-inventors had their own lawyers who were both responsible for and fully capable

of explaining patent law to them, and did. *See* Ex. 9, Beck Dep. 116:23–118:14;

Ex. 12, Finley Dep. 141:11–23 ████████████████████████████████

████████████████████████████████████████████████████.

\* \* \*

None of the routine litigation activities on which Oasis relied below can

properly serve as the basis of a RICO violation or the crime-fraud exception be-

cause, as explained above, *there is no evidence of a bribe or a criminal threat. See*

*supra* at 17-25. To this day, Oasis has been unable to identify a single false state-

ment or a single false document in the long history of this litigation. A writ of

mandamus is warranted not only to protect EMC's privileged materials but to pro-

tect other litigants from the chilling effect of allowing an opponent to convert law-

ful agreements and routine litigation conduct into a basis for intruding into privi-

leged communications.

The district court, commenting on its own production order, has declared

that "even if the appellate court were to conclude that the particular actions identi-

fied in isolation … do not justify the application of the crime-fraud exception, it

would not change the Court's conclusion because the Court did not view the evi-

dence in isolation, but rather in totality of Defendants' actions." Dkt. 999, at 9.

But the "totality" of the conduct at issue is nothing other than the sum of the indi-

vidual actions, *none* of which was criminal or fraudulent. If each individual action

was lawful, then the totality of those actions cannot be unlawful. Thus, the district court's order announces only its "conclusion" that the crime-fraud exception applies even though Oasis has not shown that EMC committed even one criminal or fraudulent act or that any of the documents in issue were prepared in furtherance of such an act. That is a textbook example of why mandamus is appropriate.

## II.    The Mandamus Relief EMC Requests Is Appropriate Under The Circumstances.

Although a writ of mandamus is an extraordinary form of relief, this Court has consistently ruled that a writ of mandamus is appropriate "to correct a clear abuse of discretion or usurpation of judicial power" in ordering the disclosure of privileged documents. *In re EchoStar Commc'ns*, 448 F.3d 1294, 1297-98 (Fed. Cir. 2006); *see also Spalding*, 203 F.3d at 804; *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1374 (Fed. Cir. 2001). Here, mandamus relief is appropriate in light of the district court's failure to apply properly the standards for the crime-fraud exception as well as the harm to EMC if the documents in question were disclosed. It is axiomatic that once a party's confidential communications have been disclosed, they cannot be taken back: the bell simply cannot be un-rung. *See SEC v. Rajaratnam*, 622 F.3d 159, 170 (2d Cir. 2010) ("Once the 'cat is out of the bag,' the right against disclosure cannot later be vindicated") (emphasis omitted).

The potential harm to EMC is particularly significant here because the compelled documents are not merely confidential, but contain communications other-

wise protected by the attorney-client privilege—"perhaps[] the most sacred of all legally recognized privileges." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997). Disclosure of attorney-client privileged communications is itself irreparable harm. And, as the Fifth Circuit has held, the compelled disclosure of privileged communications destroys the privilege, so privilege would be irreparably lost. *See In re Avantel, S.A.*, 343 F.3d 311, 317 (5th Cir. 2003). Losing that privilege, and having to disclose confidential litigation strategy discussions to one's adversary in a pending litigation, could not constitute a more fundamental harm to a litigant.

The district court brushed aside this concern on the ground that EMC will have a remedy following judgment on the merits—to wit, a new trial without the unlawfully produced evidence. Dkt. 1000, at 9-10. If that were the answer, then there would never be a need for interlocutory review of orders requiring production of privileged documents. The Supreme Court, however, disagrees, *Mohawk*, 558 U.S. at 110-11 (mandamus is appropriate for certain privilege rulings), as does this Court, *see In re United States*, 669 F.3d 1333, 1336 (Fed. Cir. 2012).

Oasis, by contrast, will not be harmed by a grant of mandamus. Oasis has already obtained extensive discovery and nearly unprecedented access to attorney testimony by deposing trial counsel, EMC's in-house counsel, and the co-inventors' lawyers. Dkts. 986, at 8. Further, Oasis has all the information it can reasonably expect to obtain in advance of trial considering how narrow the crime-

fraud exception is and how unusual it is for a party to obtain attorney-client com-

munications between its current adversary and the adversary's trial counsel. *See*

*Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).

### III. EMC Has No Other Adequate Means Of Protecting The Privileged Materials Before the Merits Of The Case Are Litigated.

EMC's request for a writ of mandamus ordering the district court to deny

Oasis's motion to compel seeks relief that EMC has "no other adequate means" to

obtain. *Cheney*, 542 U.S. at 380-81. A petitioner lacks "adequate" alternative

means to obtain the relief sought where the rights it seeks to protect "cannot be

vindicated by direct appeal." *In re Princo Corp.*, 478 F.3d 1345, 1357 (Fed. Cir.

2007). In this case, the district court has denied EMC's motion to certify an inter-

locutory appeal and to stay the effect of the disclosure order, thereby foreclosing

the only other available avenues of relief. *See* Dkts. 999, 1000.

Nor could EMC obtain adequate relief by waiting until the district court ful-

ly disposes of the underlying case on the merits and pursuing a direct appeal. Be-

cause the Fifth Circuit has ruled that the privilege is destroyed once the documents

are produced pursuant to the disclosure order, *Avantel*, 343 F.3d at 317, EMC can-

not obtain meaningful relief on direct appeal. In addition, EMC will suffer a dis-

tinct disadvantage at the upcoming trial in this litigation if it must disclose the doc-

uments in question. The privileged communications EMC has been ordered to

produce discuss strategy and defenses *in this litigation*. Disclosure will give Oasis

an unfair advantage.  The prospect of future reversal gives cold comfort to EMC.

Far from "routine[ly] appl[ying] settled legal principles," the district court's order is a "particularly injurious" and "novel privilege ruling" that will chill ordinary and routine litigation and business activities.  *Mohawk*, 558 U.S. at 111.  Litigants in patent cases often are parties to assignment agreements with cooperation clauses—indeed, Oasis has just such an agreement with Mr. Crawford.  They and their counsel are entitled to use the ordinary tools of civil litigation (including investigation, interviews, discovery, and so forth) to put forth their best case in our adversary system.  It would chill such activities, which are clearly protected by the First Amendment, to impose or even threaten RICO liability and the breach of the attorney-client privilege, based only on the routine litigation conduct that is involved here.  This Court should clarify this point now, in this case, at this time, before other NPEs add RICO claims to their arsenal of coercive tactics to pressure defendants to settle in the Eastern District of Texas and elsewhere.

Given the circumstances here, a writ of mandamus is the only remaining "safety valve" for "promptly correcting" the district court's "serious error."  *Mohawk*, 558 U.S. at 111 (quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the Court should grant this petition and direct the district court to vacate the production order.

Dated:  September 15, 2015

Respectfully submitted.


By:   /s/ Mark A. Perry

Paul T. Dacier
Krishnendu Gupta
William R. Clark
Thomas A. Brown
EMC CORPORATION
176 South Street
Hopkinton, MA 01748

Mark A. Perry
   *Principal Attorney*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 530-9696
MPerry@gibsondunn.com

Thomas M. Melsheimer
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 292-4090

Josh A. Krevitt
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193

## CERTIFICATE OF INTEREST

Counsel for EMC Corp. certifies the following:

1.    The full name of every party or amicus represented by me is:

EMC Corporation

Decho Corporation (now known as Mozy, Inc.)

2.    The name of the real party in interest (if the party in the caption is not the real party in interest) represented by me is:

N/A

3.    All parent corporations and any publicly held companies that own ten percent or more of the stock of the party represented by me are:

EMC Corp. has no parent corporation, and no publicly traded company owns more than 10% of its stock.

Mozy, Inc. is a wholly owned subsidiary of EMC Corp.

4.    The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this Court are:

**Gibson, Dunn & Crutcher LLP**
Josh A. Krevitt
Mark A. Perry
Paul E. Torchia
Steven Michael Kalogeras

**Fish & Richardson**
Thomas M. Melsheimer
Elizabeth Danielle Thompson
Williams
Thomas B. Walsh IV

**Findlay Craft, P.C.**
Eric Hugh Findlay

**EMC Corporation**
Paul T. Dacier
Krishnendu Gupta
William R. Clark
Thomas A. Brown

**Orrick, Herrington & Sutcliffe**
Bas de Blank
Alyssa Margaret Caridis
Indra Neel Chatterjee
John A. Jurata, Jr.
Robert M. Isackson
Stacy B. Martolies
Andrew S. Ong
Chris R. Ottenweller
Gabriel M. Ramsey
Daniel N. Kassabian *(terminated)*
Jacob A. Snow *(terminated)*

**McDermott Will & Emery LLP**
Teri Hong-Phuc Nguyen *(termi
nated)*

/s/ Mark A. Perry

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September, 2015, two copies of the

foregoing document were served on the following counsel by overnight delivery,

and one copy was provided by e-mail:

John M. Desmarais
jdesmarais@desmaraisllp.com
Alan S. Kellman
akellman@desmaraisllp.com
Jonas R. McDavit
jmcdavit@desmaraisllp.com
Tamir Packin
tpackin@desmaraisllp.com
Lauren Nowierski
lnowierski@desmaraisllp.com
Tal Kedem
tkedem@desmaraisllp.com
Lindsey E. Miller
lmiller@desmaraisllp.com
Tom BenGera
tbengera@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Fax: (212) 351-3401

James C. Tidwell
jct@wtmlaw.net
WOLFE, TIDWELL & MCCOY, LLP
320 N. Travis, Suite 205
Sherman, Texas 75090
Telephone: (903) 868-1933
Fax: (903) 892-2397

*Attorneys for Oasis Research, LLC*

Beth I. Z. Boland
bboland@foley.com
Joseph H. Jolly
jjolly@foley.com
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Telephone: (617) 342-4000
Fax: (617) 342-4001

Andrew J. Wronski
awronski@foley.com
FOLEY & LARDNER LLP
777 East Wisconsin Ave.
Milwaukee, WI 53202
Telephone: (414) 297-5518
Fax: (414) 297-4900

Andy Tindel
atindel@andytindel.com
MT2 LAW GROUP
112 East Line Street, Suite 304
Tyler, TX 75702
Telephone: (903) 596-0900
Fax: (903) 596-0909

*Attorneys for Carbonite, Inc.*

/s/ Mark A. Perry