**Docket No. 2015-151**

---

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

*IN RE* EMC CORP. AND DECHO CORP.

*Petitioners.*

———————————

ON PETITION FOR WRIT OF MANDAMUS TO THE
UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS
IN CASE NO. 4:10-cv-00435-ALM
JUDGE AMOS L. MAZZANT

---

**NON-CONFIDENTIAL RESPONSE TO PETITION FOR A WRIT OF MANDAMUS**

---

JONAS R. MCDAVIT
ALAN S. KELLMAN
DESMARAIS LLP
230 Park Avenue
New York, NY  10169
(212) 351-3400

*Attorneys for Respondent*

## CERTIFICATE OF INTEREST

Counsel for the respondent Oasis Research, LLC certifies the following:

1.     The full name of every party or amicus represented by me is Oasis Research, LLC.

2.     The name of the real party in interest represented by me is NOT APPLICABLE.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are NONE.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

> John M. Desmarais, Alan S. Kellman, Jonas R. McDavit, Tamir Packin, Lindsey E. Miller, Tom BenGera, Justin P. Wilcox, Dustin Guzior, John C. Spaccarotella, Lauren M. Nowierski, Laurie Stempler, Tal Kedem, Dmitry Kheyfits (Terminated), Xiao Li (Terminated), Eugene Chiu (Terminated), of Desmarais LLP; James C. Tidwell of Wolfe, Tidwell & McCoy, LLP.

Dated:  September 22, 2015                    Respectfully submitted,


*/s/ Jonas R. McDavit*
_____

Jonas R. McDavit
*Attorney for Respondent*
*Oasis Research, LLC*

# TABLE OF CONTENTS[1]

CERTIFICATE OF INTEREST ............................................................... i

TABLE OF CONTENTS....................................................................... ii

TABLE OF AUTHORITIES ................................................................ iv

INTRODUCTION .................................................................................1

ISSUES PRESENTED...........................................................................3

STATEMENT OF FACTS .....................................................................3

    I.      Background Of The Case. .........................................................3

    II.    Defendants' Contacts With Campos, Atwood, and Todd...........................4

    III.   Monetary Offers To Campos, Atwood And Todd. ....................9

    IV.   The Alleged Assignment Agreement.......................................11

    V.    Continued Contacts With Atwood, Campos And Todd. ..........13

    VI.   The District Court's Summary Judgment Order.......................14

    VII.  The District Court's Discovery Orders. ..................................15

STANDARD OF REVIEW ..................................................................20

SUMMARY OF ARGUMENT ............................................................21

ARGUMENT .......................................................................................22

    I.      EMC Has Other Means Of Obtaining The Relief Desired. ......22

    II.    EMC's Right To The Writ Is Not "Clear And Indisputable." ..................24

---

[1] Per the Court's Sep. 16, 2015 order, this brief is in response is to EMC's Sep. 15, 2015 mandamus petition (D.I. 2). Oasis will respond separately to EMC's supplemental petition (D.I. 17) should the Court request additional briefing.

A.    Defendants Conduct Surrounding The August 30 Agreement Demonstrates That The Purported Assignment Agreement Is Not Lawful. ................................................................. 27

B.    The Co-Inventorship Claim Was The Result Of Defendants' Improper Inducements. ................................................ 28

C.    Defendants Engaged In Witness Tampering. ................................... 30

CONCLUSION ......................................................................................................... 30

CERTIFICATE OF SERVICE ................................................................................ 32

CONFIDENTIAL MATERIAL OMITTED

Oasis has omitted confidential material from pages 4-14 of this Response to EMC's Petition For A Writ of Mandamus.  That information relates to material described by EMC at page iv of its petition and sealed pursuant to protective order in the underlying litigation, entered December 2, 2011.

# TABLE OF AUTHORITIES

## Cases

*Allied Chem. Corp. v. Daiflon, Inc.*,
    449 U.S. 33 (1980) ........................................................................21

*D&D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*,
    Civ. No. 03-1026, 2011 WL 1871110 (D.N.J. May 13, 2011)...........25

*Ethicon, Inc. v. U.S. Surgical Corp.*,
    135 F.3d 1453 (Fed. Cir. 1998) .........................................................28

*Freedom Trust v. Chubb Group of Insurance Co.*,
    38 F .Supp. 2d 1170 (C.D. Cal. 1999) ...............................................25

*In re Grand Jury Subpoena*,
    419 F.3d 329 (5th Cir. 2005) .................................................... passim

*In re Int'l Sys. and Control Corp. Sec. Litig.*,
    693 F.2d 1235 (5th Cir. 1982) ................................................. 16, 25

*In re Lawson Software*,
    494 F. App'x 56 (Fed. Cir. 2012) ............................................. 20, 21

*In re Shelbyzme LLC*,
    547 F. App'x 1001 (Fed. Cir. 2013) ..................................................21

*In re Vistaprint Ltd.*,
    628 F.3d 1342 (Fed. Cir. 2010) .........................................................21

*In re Volkswagen of Am., Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009) .........................................................21

*Koch v. Specialized Care Servs., Inc.*,
    437 F. Supp. 2d 362 (D. Md. 2005)...................................................25

*Mallard v. United States Dist. Court for Southern Dist. of Iowa*,
    490 U.S. 296 (1989) .................................................................. 21, 24

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009).......................................................... 20, 21, 23

*Newport Ltd. v. Sears, Roebuck & Co.*,
    Civ. No. 86-2319, 1995 WL 295297 (E.D. La. May 11, 1995) .........25

*U.S. v. Edwards*,
    303 F.3d .............................................................................................16

*United States* v. *Dern*,
    289 U.S. 352 (1933)...........................................................................21

*United States v. Zolin*,
   491 U.S. 554 (1989)......................................................................... 16, 17, 19, 26

# INTRODUCTION

Before this Court is EMC's last-ditch effort to avoid trying this RICO case on the merits and according to the district court's trial schedule.  EMC requests that this Court intervene on the eve of trial and grant the extraordinary remedy of a writ of mandamus to overturn a discovery order in which the district court applied well-established Fifth Circuit law to the complex facts of this case.  This Court should decline that invitation.

In finding that certain documents are discoverable under the crime-fraud exception to the attorney-client privilege, the district court took into account "all documents submitted by the Defendants in their *in camera* submissions, and [ ] ***all of the evidence available to the Court*** . . . ." A100 at n.2.  Over the course of this litigation the district court has become intimately familiar with the underlying evidence based on its extensive review of documents and receipt of live witness testimony.  For example, the district court: (1) presided over a seven-day trial in 2013, including the live testimony of several important witnesses; (2) reviewed extensive briefing, including summary judgment briefing, related to Oasis' RICO claims; and (3) reviewed over one thousand documents *in camera*—including those at issue in the Petition as well as other third-party documents.

EMC does not challenge the district court's exercise of discretion in ordering EMC to submit the documents in question for *in camera* review.  Instead, EMC challenges the district court's conclusion that EMC must produce certain documents under the Fifth Circuit's well-established crime-fraud exception to the attorney-client privilege.  Should this Court find that the facts of this case warrant a

mandamus review—and they do not—this Court should affirm the district court's correct legal articulation of the crime-fraud exception and defer to the district court's factual findings regarding *prima facie* evidence of a crime or fraud. And this Court should not engage in an *in camera* review to determine whether each of the ordered documents is reasonably related to the crime or fraud, because with only the cold mandamus record before it, this Court is not well-positioned to evaluate the context of each document necessary for that determination.

This Court need not reach EMC's substantive disagreement with the district court's order because EMC may seek review of the district court's order on direct appeal. Accordingly, Oasis respectfully requests that the Court deny the Petition and require EMC to seek its relief on direct appeal from a final judgment on the merits. Contrary to EMC's attestations that its only available relief from the district court's order is a writ of mandamus, two courses of action are available to EMC through which it can seek this Court's relief on direct appeal. First, consistent with the district court's holding and Supreme Court precedent, EMC could have produced its documents in compliance with the district court's order, directly appealed the district court's discovery rulings after final judgment, and sought another trial that excluded the documents in question and evidence obtained as a result of those documents. Second, EMC can continue to violate the district court's order—as it already has done through its delay in seeking this Court's intervention—not produce the documents, and proceed to trial with the adverse inference jury instruction ordered by the district court. As with other jury instructions, EMC may seek relief from this Court on direct appeal after final

judgment. A writ of mandamus is not appropriate because EMC's disagreements with the district court should be raised on direct appeal after final judgment.

## ISSUES PRESENTED

1. Should this Court use the extraordinary remedy of a writ of mandamus to conduct an interlocutory review of a district court discovery order that can be adequately addressed on direct appeal after final judgment on the merits?

2. Should this Court use the extraordinary remedy of a writ of mandamus to overturn the district court's discovery order requiring EMC to produce documents to Oasis even though the district court reached its conclusion after it conducted an *in camera* review of hundreds of documents (the propriety of which EMC does not challenge on appeal) and it correctly applied well-established Fifth Circuit precedent regarding the crime-fraud exception to the attorney-client privilege to the facts of this case, with which the district court is intimately familiar?

## STATEMENT OF FACTS

### I.    Background Of The Case.

Oasis brought this action on August 30, 2010 in the Eastern District of Texas, alleging that EMC, along with thirteen other companies, infringed four United States Patents. A107-11. Christopher Crawford is the sole named inventor listed on the patents-in-suit. The only defendants that remain in the litigation are Petitioner EMC and Defendant Carbonite, Inc. This Petition does not relate to Oasis' patent-infringement claims, but to Oasis' counterclaim, alleging that EMC and its co-defendants violated the Racketeer Influenced and Corrupt Organizations

Act ("RICO") through a pattern of activity that included predicate acts of bribery and witness tampering of at least the following three individuals: Charles (Chuk) Campos, Donald (Don) Atwood, and Teresa (Teri) Todd.  A6054-72.

EMC asserts that Campos and Atwood were omitted co-inventors and that Todd is the heir to allegedly omitted co-inventor Jack Byrd.  Defendants' co-inventorship claims were tried to a jury from March 14-22, 2013.  A555-1014. During that trial, the district court observed the live testimony of Campos, Atwood, and Todd.  On May 22, 2013, the jury returned a verdict rejecting Campos and Atwood's claims of co-inventorship, and finding that Jack Byrd was an omitted co-inventor.  A537-39.  Rather than crediting any of Campos, Atwood, or Todd's testimony, the jury's verdict with respect to Jack Byrd was apparently based on a single document from May of 1992 that referred to "Jack Byrd's idea."  A1033-34. The district court set aside the jury's verdict regarding Byrd for numerous reasons, including because "there [wa]s insufficient evidence for a jury to conclude that Byrd conceived some significant portion of the invention" and that the May 1992 document was legally insufficient to corroborate assertions of Byrd's co-inventorship.  A1029; A1031-34.

## II.    Defendants' Contacts With Campos, Atwood, and Todd.

Defendants first reached out to the alleged co-inventors in December 2011 or January 2012, when Defendants contacted Campos through EMC's counsel, ███████████ Orrick, Herrington & Sutcliffe LLP.  A2566-67; A666 at 443:3-7. ████████████████████████████████████ A2142 at 13:15-18; A2144-45 at 22:11-19, 22:22-23:1, 23:4; A4232-43.  In fact, in the nearly twenty

**CONFIDENTIAL MATERIAL REDACTED**

years since they had met Crawford—and despite the fact that they knew he was pursuing patents relating to online backup—neither Campos nor Atwood had ever made a co-inventorship claim.  A676 at 484:23-485:17; A679 at 494:1-9; A714-15 at 634:16-639:1; A763-64 at 828:12-832:1.  ████████████████████ ██████████████████████████████  A2156 at 67:3-68:25.

Nevertheless, counsel for Defendants pressed Campos to get involved in the case.  Although Defense counsel sought to have Campos rescind his testimony that he felt badgered through a declaration after his 2012 deposition Campos admitted at trial that:  "I felt threatened. Yeah. That's honest."  A6466-68; A688 at 530:4; A687 at 529:14-19, 530:5-10.  As Atwood explained, ████████████████ ███████████████████████████████████████████████████ ███████████  A1516 at 241:6-10; A1542-43 at 280:16-281:12.

On January 12, 2012, Campos left a telephone message for Oasis' counsel, explaining that he was contacted by Defendants' counsel, thought Defendants were "on the other side," and wanted "to help Chris [Crawford] if possible."  A4244; A4232.  Counsel for Oasis declined to put Campos in contact with Crawford—the named inventor on the patents-in-suit—who was then represented and a likely witness in this litigation.  A668 at 450:15-451:13.

By February 2012, ██████████████████████████████████ ███████  A2145 at 22:17-23; A4232.  Accordingly, Defendants took a more aggressive approach to convince Campos to assist the Defendants.  ██████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████

**CONFIDENTIAL MATERIAL REDACTED**

████████████████████████████████████████████████ A4235;
A2145 at 23:25-24:12; A3301-302 at 69:3-70:9; A3429 at 155:11-18. That
program not only painted Crawford in a bad light, but also was negative toward
Oasis Research and Intellectual Ventures, the current and former owners of Mr.
Crawford's patents. A744 at 752:15-753:4. Campos contacted Atwood in
February 2012, to discuss EMC's calls. A1513-14 at 227:6-10, 229:11-23; A743
at 751:5-20. Like Campos, Atwood initially did not want to be involved in the
lawsuit and instructed Campos to "keep [him] out of this." A764 at 834:19-25.

From February to April of 2012, at least ████ and lead counsel for EMC
and the Joint Defense Group, ████████████ explained to Campos what it
would take to satisfy Defendants and to make money. A4235-42; A1514 at
230:23-231:1; A764 at 832:25-835:21. If Campos claimed that he, Byrd, and
Atwood were co-inventors of Crawford's patents, they stood to gain. A764 at
835:1-8. For example, Campos' March 28, 2012 notes indicate that he had a
conversation with ████ during which Campos noted "arrangement" and "pay
sum" (or "pay some"). A4240. And by this time, it appears that Campos had told
Atwood that working with Defendants would be an "opportunity [for them] to
make a few bucks." A764 at 835:1-8. Just a week later, on April 5, 2012, Campos
again spoke with ██████████ indicated that Campos and Defendants
"need[ed] to move forward or not." A4241. ████████████ if Campos
worked with Defendants he could make "10's of thousands of dollars per license."
A4241; A2147-48 at 31:13-33:4, 33:21-34:18; A3430 at 186:13-23.

Defendants' tactics began to work to convince Campos to assist them.

CONFIDENTIAL MATERIAL REDACTED



A2149 at 40:23-41:4.

In a conversation that EMC claims took place on April 12, 2012, but Campos believes was actually in March 2012, Campos and ▮▮▮▮▮ discussed how Campos could contribute to this case and what he could receive in return. A3302 at 73:4-23; A4238-39. Unsolicited, ▮▮▮▮▮ explained to Campos that to be a co-inventor, he had to have made a "not insignificant contribution to the patent" and that he could not be an "assistant." A4238. They then went on to discuss contingency counsel for Campos and Campos' "avenue of gain." A4239.

Campos noted that the "joint defense group" needed to be "satisfied [he] had something worthwhile" and (again referring to the joint defense group) a "proposal made to get me early compensation – agreement to cooperate." A4239.

A3283-84 at 372:20-373:24; A4239.

A3352 at 135:9-19.

A4249; A4237; A2151-52 at 47:3-6, 49:13-50:20; A2157 at 71:3-24.

A3353 at 172:11-20, 173:4-15.

But Campos was concerned that the facts might get in the way of his payday.

On April 14, 2012, ████████████████████████████████████

████████████████████████████████████ A12-47; A4292-302. ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████ A4292.  The document ████████████████████████████

was a document authored by Crawford in March 31, 1992, entitled "ACS Online

Member Services" which included a description of Crawford's ideas, including

online backup, that predate the alleged co-inventors and later became the subject of

the patents-in-suit.  A2239-50; A4304-307.   Indeed, Atwood would concede—

despite all of the documents that Campos had sent him—that there simply was no

evidence to demonstrate that he, Byrd, or Campos were co-inventors.  A2017 at

221:4-9; A759 at 815:16-22.

The very next day, on April 15, 2012, Atwood and Campos exchanged an

email that Campos would produce at his deposition less than two months later—

and thus was well known to Defendants—in which Campos told Atwood that "if

money were not an issue for me right now, the right thing would be to focus our

efforts on getting the patent approvals taken away."  A2253; A2170 at 122:16-23.

In the same email, Atwood agreed that "no patent should have been issued,

however it was, so the game becomes who are we more valuable to in this

charade."  A2252. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████. A6447-

48. At around the same time, Campos was looking to help Defendants build a

**CONFIDENTIAL MATERIAL REDACTED**

successful attack against Oasis and Mr. Crawford. On April 14, 2012, Campos emailed the Orrick law firm, told the lawyers there that he had hired contingent counsel, and suggested that he meet with ███████████████ to help them prepare for Mr. Crawford's deposition. A2255. Campos explained that Defendants could "count on" the fact that his and Atwood's documents and affidavits" will help them "prevail," and asked if their help met Defendants' needs. A2255. Shortly thereafter, Campos and Atwood retained a firm on a contingent basis—the Beck firm. A2255.

### III. Monetary Offers To Campos, Atwood And Todd.

Atwood testified that around April 23, 2012, Defendants offered to pay him, Campos, and Todd (Byrd's widow) $75,000 for their testimony:

> Q. Well, you know, at least there was a conversation where $75,000 was offered in exchange for testimony, right?
>
> A. Yes.
>
> Q. What about with respect to yourself? Have you ever been offered money in exchange for your testimony here today?
>
> A. Yes.
>
> Q. Who offered you money in exchange for your testimony here today?
>
> A. I believe it was the defense group.
>
> Q. Okay. And is it also true that the defense group offered Mr. Campos money in exchange for his testimony?
>
> A. Yes.

**CONFIDENTIAL MATERIAL REDACTED**

Q. So, this offer [] — it was made roughly in April of 2012, correct?

A. Yes.

A764-65 at 838:6-13, 835:18-21, 836:6-8, 20-23, 837:6-8. ████████████

████████████████████████████████████████████

████████████████████████ A2231.

In addition, a week before Atwood's and Campos' depositions in 2012 (on April 30, 2012), lead counsel for EMC led a joint call between Defendants and Mr. Atwood and Mr. Campos.  During that call, Defendants, previewed documents they intended to use at the upcoming depositions and testimony they planned to solicit.  A1518 at 250:12-252:16; A718-19 at 649:5-13, 649:19-651:24, 652:9-653:7; A764 at 832:25-834:13.  Counsel for Carbonite was also on the call.  A3423 at 187:1-10.  At the time, of course, Atwood and Campos knew they could receive money from Defendants if they gave the right testimony.

EMC and Carbonite contend that they never offered money for testimony, but rather to acquire the alleged co-inventors' alleged rights to the patents-in-suit. But the evidence says otherwise.  For example, at the time of their offer,

████████████████████████████████████████████

████████████████████████████████ A3419 at 129:1-12; A3422 at 139:9-23; A3375 at 124:1-14; A3377-78 at 132:6-137:22. ████████████

████████████████████████████████████████████

████████████████ A2019-20 at 232:6-15; 232:19-233:4, 233:13-21; A3294 at 40:23-41:4. ████████████████████████████████████

████████████████████████████████████

Indeed, ███████████████████████████████████

████████████████████████████████████████████████

██████████████████████ A3380-81 at 144:21-146:8; A3419-20 at 129:8-

132:8. Thus, EMC and Carbonite made monetary offers that were contingent on

hearing the correct testimony from Campos and Atwood.

## IV.    The Alleged Assignment Agreement.

In a written agreement dated August 30, 2012, and titled "Agreement to

Assign Patent Rights" (the "August 30 Agreement"), four Defendants agreed to

pay the alleged co-inventors a total of $200,000 up front and an additional

$140,000 when this litigation ends. A541-54. Each defendant was to pay $50,000

upfront and $35,000 once the litigation ended with respect to that defendant. *Id.*

Defendants have paid the $340,000 in full, even though the litigation is ongoing

with respect to EMC and Carbonite. A6101, A6216-18. ████████████████

████████████████████████████████. A2031.[2]

The alleged co-inventors were not named on the patents-in-suit and had not

established that they had any rights to the patents-in-suit at that time. A1044;

A1142; A1242; A1343. In fact, EMC believed ███████████████████

████████████████████████████████████████████████

---

[2] Although EMC and Carbonite did not have any contractual obligation to make
their additional payments of $35,000, they agreed to make such payments after
Atwood reminded them that Defendants "'won' largely based on our cooperation"
and requested that Defendants "pay the people that basically 'made their case.'"
A6216-18.

████████████████████ A3344-45 at 53:19-54:12.

The August 30 Agreement includes factual recitals drafted by Defendants. A541-42.  In fact, to their surprise, the alleged co-inventors were not consulted at all during the drafting of the August 30 Agreement, and instead, were merely given final copies of the agreement to sign.  A2032.

The alleged co-inventors themselves confirmed that the August 30 Agreement required them to testify at trial that they were co-inventors of the patents-in-suit in exchange for the money that Defendants paid them.  A695-96 at 560:21-24, 565:6-18; A769 at 853:13-16; A3439 at 39:12-40:7.  Nonetheless, the alleged co-inventors signed the final documents without asking questions.  A2032. Indeed, Campos testified that he entered into the August 30 Agreement because he was "looking for money" and further explained that the alleged co-inventors "were doing what was best for us and our families."  A694 at 554:11-13, 554:20-21.

As part of the August 30 Agreement, Defendants also agreed to pay the alleged co-inventors' lawyers.    A544.   ███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

A6439-46.  ██████████████████████████████████████████████████████

██████████    *E.g.*, A4476-78; A4480-81; A4482-84; A4486-88; A4518-19.   ██

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ A3307 at 134:23-135:25; A3318 at 250:18-253:21.

12

## V.    Continued Contacts With Atwood, Campos And Todd.

In January 2013, Defendants began preparing a motion for summary judgment seeking to dispose of Oasis' RICO claims. ███████████████████

█████████████████████████████████████████████ *E.g.,*

A3402 at 284:23-285:7.  In an effort to █████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████ A1600. █████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ A3403-06 at 287:16-19, 288:19-299:24. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ A3403-06 at 288:19-299:24; A3349 at 236:23-237:6.

Atwood, Campos, and Todd attended trial because they were required to do so by the August 30 Agreement, even though they did not want to attend the trial. A769 at 853:1-16; A695 at 560:5-24; A543.  As of the March 2013 trial, EMC and Carbonite each owed the alleged co-inventors ██████ pursuant to the August 30 Agreement.  A3207 at 51:16-20; A3228 at 144:16-145:3; A2190-91 at 205:20-206:1.  Atwood, Campos, and Todd knew that to obtain that payment they were required to come to trial and testify that they were co-inventors.  A764-65 at 835:1-836:23; A769 at 852:6-853:16; A2191-92 at 207:2-15, 211:1-8.

**CONFIDENTIAL MATERIAL REDACTED**

██████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

A2194-95 at 219:22-222:25; A48-51; A4472-74.    Campos ██████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████    A4468.  The improper nature of the inducements was

well known.  ████████████████████████████████

███████████████████████████████████████

██████████████████    A6690-91.

## VI.    The District Court's Summary Judgment Order.

On February 5, 2015, in a well-reasoned and factually detailed opinion, the district court denied Defendants' motion for summary judgment on Oasis' RICO counterclaims.  A1036-42.  Based on a review of the evidence, the district court found that "[t]here is evidence to indicate that Defendants actively pursued cooperation from Atwood, Campos, and Todd in pursuit of their testimony regarding co-inventorship, that Defendants directly gave, offered, and promised money either 'for' or 'because of' the testimony that the witnesses gave at both their depositions and at trial.  The Court finds that these are issues of material fact, which must be resolved by a jury."  A1040.  The district court also found that "there are material fact issues as to whether Defendants engaged in misleading conduct towards Atwood, Campos, and Todd in order to influence their testimony, or whether these witnesses were intimidated or corruptly persuaded to influence

their testimony" and "there is a fact issue as to whether there is a pattern of activity sufficient to amount to or post a threat of continued criminal activity."  A1040.

## VII.    The District Court's Discovery Orders.

On May 22, 2015, Oasis wrote Defendants requesting the production of documents relating to Defendants' co-inventorship claims and the payments made or offered in connection with Oasis' RICO allegations.  A95.  Following several meet and confers, on June 23, 2015, Oasis filed its Motion to Compel Defendants to Produce Documents Related to Alleged Co-Inventors Under the Crime-Fraud Exception to the Attorney-Client Privilege and to Compel Production of Defendants' Joint Defense Agreement.  A1484-503.

On July 22, 2015, the district court granted in part and denied in part Oasis' Motion to Compel Defendants to Produce Documents Related to Alleged Co-Inventors Under the Crime-Fraud Exception to the Attorney-Client Privilege and to Compel Production of Defendants' Joint Defense Agreement.  A72-76. The district court required Defendants to produce the Joint Defense Agreement to Oasis at that time, and required Defendants to produce for *in camera* inspection documents related to the RICO allegations no later than July 28, 2015.  (*Id.*)

The district court's *in camera* production order followed a similar order in which the district court required *in camera* production of third party documents from the alleged co-inventors that were asserted to be discoverable under the crime-fraud exception to the attorney-client privilege.  A1  In that related order, the district court correctly explained:

To establish the crime-fraud exception, the party seeking to overcome the privileged information bears the burden of establishing a prima facie case that the attorney-client relationship was intended to further criminal or fraudulent activity. *See U.S. v. Edwards*, 303 F.3d at 618. To make a necessary prima facie showing for the application of the crime-fraud exception, the proponent of the evidence must produce evidence "such as will suffice until contradicted and overcome by other evidence…a case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded." *In re Grand Jury Subpoena*, 419 F.3d at 336 (citing *In re Int'l Sys. and Control Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982)).

A8.  Citing *United States v. Zolin*, 491 U.S. 554, 572 (1989), the district court also correctly explained that it may conduct an *in camera* review to determine if the privileged documents have been overcome by the crime-fraud exception.  A8.  The district court further explained that "[a]t his previous deposition, Atwood testified to being offered money in exchange for testimony . . . [and that] [s]ince that time, Third Parties have asserted that any monetary offers were made in exchange for patent rights."  A9.  The district court therefore ***found as a matter of fact that "any advice relating to the purported assignment of patent rights falls under the crime-fraud exception to the attorney-client privilege***."  A9 (emphasis added).

The only question that remained was whether the particular communications at issue were in furtherance of that crime/fraud, e.g., in furtherance of payments for so-called patent "rights."  Because Oasis had demonstrated a factual basis adequate to support a good faith belief that they were, *in camera* review of the documents was appropriate under *Zolin*.  A10.

On July 24, 2015, the district court held a telephone conference with the parties in response to EMC's request for clarification of the district court's July 22,

2015 *in camera* production order.   A2270 at 5:19-23.   Defendants also sought additional time—until August 11, 2015—to submit their documents for *in camera* review, which the district court allowed.  A2300-01 at 35:8-36:7.

The district court explained that the weighing of Atwood's testimony regarding payments for testimony "is an issue of pure credibility," and that "it is clear to the Court that [the alleged co-inventors] were looking at . . . which side maybe would pay them more."  A2287-88 at 22:21-23:10.  As the Court explained, "[i]n light of all the other things that have happened in terms of their communications with each other too" a key issue is trying to figure out whether the purported excuse that the money was paid in exchange for right is credible.  A2288 at 23:11-17.   The district court further indicated that evidence it had reviewed could support the "inverse" of Defendants' payment-for-rights theory, namely that the alleged co-inventors' "didn't really necessarily think they had any rights . . . and they would go to whichever side would pay them the most money and they would testified accordingly."  A2295-96 at 30:23-31:9.[3]

After significant time reviewing the *in camera* submissions, on August 28, 2015, the district court ordered EMC and Carbonite to produce 357 and 215

---

[3] During the conference, the district court also noted its intimate familiarity with the facts of the case, referring to its pervious *in camera* review and indicating that "***I've seen the communications with the alleged co-inventors, what their communications were going on between each other and their counsel***, so I think the subset of when these names first came to the attention of the Defendants and those internal communications to the point of the agreement is what the Court is -- would be more interested in."  A2289 at 24:10-15 (emphasis added).

documents, respectively, to Oasis by September 4, 2015, because those documents met the crime-fraud exception to the attorney client privilege.  A77-81; A97.

On September 4, 2015, rather than comply with the district court's discovery order, EMC and Carbonite filed motions for stays and motions for interlocutory certification with the district court.  A3065-102.  On September 11, 2015, after ordering expedited responsive briefing, the district court denied those motions.  A82-104.  The district court specifically addressed several of the arguments EMC makes on appeal and held that "Defendants are confusing their substantive arguments regarding the RICO allegations with the Court's limited piercing of the attorney-client privilege for discovery purposes."  A100.  The district court further correctly explained that "the crime-fraud exception applies when the movant can make a *prima facie* case showing (1) a crime or fraud has been committed, and (2) the privileged materials are reasonably related to the furthering of the crime or fraud."  A100 at n.2 (citing *In re Grand Jury Subpoena*, 419 F.3d 329, 336 (5th Cir. 2005)).  The district court further correctly articulated controlling Fifth Circuit law, explaining that "[t]o make a necessary *prima facie* showing for the application of the crime-fraud exception, the proponent of the evidence must produce evidence 'such as will suffice until contradicted and overcome by other evidence…a case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded.'"  A100 at n.2.[4]  Finally, the

---

[4] The district court further explained that its *in camera* review was triggered by Oasis making "a showing of a factual basis adequate to support a good faith belief

district court explained that "[t]he Court reviewed all documents submitted by the Defendants in their *in camera* submissions*, and with all of the evidence available to the Court*, determined that a limited amount of documents received were subject to production under the crime-fraud exception to the attorney-client privilege regarding the RICO allegations." A100 at n.2 (emphasis added). The district court further clarified:

> In its *in camera* review, the Court did not rely on any singular act to justify its application of the crime-fraud exception, but rather the totality of Defendants' actions, the alleged co-inventor testimony, and the record evidence before the Court. Therefore, even if the appellate court were to conclude that the particular actions identified in isolation by Defendants do not justify the application of the crime-fraud exception, it would not change the Court's conclusion because the Court did not view the evidence in isolation, but rather in totality of Defendants' actions. A90.

The Court further elaborated that its application of controlling Fifth Circuit law "involve[d] the Court's fact-specific evaluation of the patent Assignment Agreement, and any of a number of EMC, and other Joint Defense Group, actions to purportedly induce the alleged co-inventors to come forward and testify in support of Defendants' inventorship defense." A90.

In ruling on Defendants' motions, the district court also correctly addressed, and rejected, Defendants' arguments that interlocutory review is necessary to protect their rights. The district court explained that "[i]n *Mohawk Industries*, the

---

by a reasonable person, that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." A100-01 (quoting *United States v. Zolin*, 491 U.S. 554, 572 (1989)).

Supreme Court stated that 'appellate courts can remedy improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings:  by vacating an adverse judgment and remanding for a new trial in which the protect[ed] material and its fruits are excluded from the evidence.'"  A92 at n.2 (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 109 (2009); A10 at n.3.  The district court further explained interlocutory appeal of its order is inappropriate because "the appellate court could remedy an improper disclosure of privilege material, if any, upon review of the final judgment."  A92 at n.2; A101 at n.3.  The district court specifically explained that for that reason, Defendants' would not be irreparably harmed by their production pursuant to the district court's orders.  A102.  The district court further noted that this Court has followed the precedent established by *Mohawk*.  A101-02 at n.4 (citing *In re Lawson Software*, 494 F. App'x 56, 57-58 (Fed. Cir. 2012)).

In light of EMC's continued (and unexcused) disregard of the district court's production order, on September 15, 2015, the district court issued discovery sanctions and provided the parties with the adverse inference jury instruction it will give at trial to address EMC's refusal to produce the ordered documents.  A105-06.

## STANDARD OF REVIEW

"The writ of mandamus is available in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power."  *In re Volkswagen of Am., Inc.,* 566 F.3d 1349, 1351 (Fed. Cir. 2009).  A party seeking a writ bears the burden of proving that it has no other means of obtaining the relief desired, *Mallard v. United States Dist. Court for Southern Dist. of Iowa,* 490 U.S. 296, 309

(1989), and that the right of issuance of the writ is "'clear and indisputable,'" *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010) (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980). "A suggestion that the district court abused its discretion, which might warrant reversal on a direct appeal, is not a sufficient showing to justify mandamus relief." *Volkswagen,* 566 F.3d at 1351. The equities lie considerably against granting mandamus. *See United States* v. *Dern,* 289 U.S. 352, 359 (1933).

In declining to address questions of attorney-client privilege on mandamus, this Court has specifically held that "issues of attorney-client privilege can generally be reviewed effectively on appeal from final judgment." *In re Lawson Software*, 494 F. App'x 56, 57 (Fed. Cir. 2012) (citing *Mohawk Indus.*, 558 U.S. at 109). Nor does the invocation of the crime-fraud exception to the attorney-client privilege make mandamus necessary. This Court has recognized that even in cases involving the crime-fraud exception to the attorney-client privilege, the parties ordered to produce documents have "alternative avenues to obtain meaningful review of [their] arguments after trial." *In re Shelbyzme LLC*, 547 F. App'x 1001, 1002 (Fed. Cir. 2013) (citing *Mohawk Indus.*, 558 U.S. at 109) (denying mandamus where petitioner attacked the district court's findings regarding a *prima facie* case as it relates to the crime-fraud exception).

## SUMMARY OF ARGUMENT

Petitioner EMC offers no reason to address a routine discovery order through the extraordinary remedy of a writ of mandamus. Far from the Hobson's choice it attempts to portray, EMC may produce the documents now and appeal

that order later.  Or it may withhold its production, subject itself to an adverse jury instruction, and appeal that instruction later.  Either way, an appeal in the ordinary course is more than adequate to protect EMC's rights.

EMC's right to the writ on the merits is not "clear and indisputable."  EMC does not challenge the district court's decision to review EMC's documents *in camera*.  Nor could it, as the crime-fraud exception undoubtedly applies under the Fifth Circuit *prima facie* standard, which requires that "evidence to the contrary is disregarded."  *In re Grand Jury Subpoena*, 419 F.3d at 336.  EMC's piecemeal attack on parts of the evidence—such as the purported assignment agreement—miss the point, as they improperly disregard the mountain of evidence supporting a *prima facie* case of crime/fraud, as set forth in the Statement of Facts above.

## ARGUMENT

## I.    EMC Has Other Means Of Obtaining The Relief Desired.

This Court's review on mandamus is not necessary or appropriate because EMC can adequately challenge the district court's production order on direct appeal after final judgment on the merits.  Indeed, EMC had at its disposal two courses of action, each of which would allow EMC to challenge the district court's discovery order, and neither of which necessitates interlocutory review.  First, EMC could have complied with the district court's order, produced the documents, avoided the adverse inference jury instruction, A105-06, proceeded to trial and final judgment on the merits, and challenged the district court's production order on direct appeal.  Although EMC argues that it would have been irreparably

harmed by the disclosure of its confidential documents, the district court—which has reviewed the documents in camera—has held that in this case, a reversal of its production order could be adequately addressed by a new trial that precludes such evidence.  A101-02.  The district court's factual finding does not mean, as EMC suggests, that mandamus is never appropriate for challenging questions of privilege.  Nor did the district court make such a finding.  Instead, the district court directly addressed the same argument that EMC makes to this Court and specifically held:

> Although the Court in Mohawk discussed that a district court could submit a novel question of law to the appellate court for interlocutory appeal, it nonetheless found that the crime-fraud exception to the attorney-client privilege was not subject to collateral appeal.  558 U.S. at 109-111.  As the Court stated, "[a]ppellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from the evidence."  558 U.S. at 109.

A101 at n.3 (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009)).

EMC provides only the conclusory assertion that the district court "brushed aside" EMC's concern.  (Pet. at 28.)  Because the Supreme Court has held that matters of privilege can be addressed in the same way as other evidentiary rulings—and EMC has not provided controlling law to the contrary—this Court should decline to entertain mandamus.

Second, even if this Court were of the opinion that EMC's production of privileged documents cannot be remedied through appeal, EMC has a course of

action available to it that does not require production of those documents. Indeed, EMC can continue to violate the district court's order through trial and final judgment on the merits. EMC then can directly appeal the district court's production order and the adverse inference jury instruction associated with EMC's non-compliance with that order. Should this Court reverse the district court's decisions, having the benefit of a fully developed record and jury verdict, it can vacate the district court's discovery sanction and order a new trial in which the additional jury instruction is not given. EMC provides ***no explanation*** as to why that course of action, and direct appeal, is not available to it. That silence alone is fatal to the Petition because EMC failed to meet its burden in proving mandamus is necessary. *Mallard*, 490 U.S. at 309.

Given the highly factually intensive inquiry in this case, and EMC's unambiguous ability to challenge the district court's production order through direct appeal of a judgment on the merits—which would not necessarily require production of its allegedly privileged documents—the Court should decline to issue a writ of mandamus.

## II.    EMC's Right To The Writ Is Not "Clear And Indisputable."

Although EMC repeatedly asserts that Oasis failed to make a *prima facie* showing of a crime or fraud, EMC does provide this Court with ***any guidance*** of

what that standard requires.[5]  In fact, EMC conspicuously omits from its brief, the district court's repeated, and correct, explanation of controlling Fifth Circuit law:

> To make a necessary prima facie showing for the application of the crime-fraud exception, the proponent of the evidence must produce evidence "such as will suffice until contradicted and overcome by other evidence…a case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded." *In re Grand Jury Subpoena*, 419 F.3d at 336 (citing *In re Int'l Sys. and Control Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982)).

A8; A100 at n.2.   As the district court correctly held in denying Defendants' motions for summary judgment, the extensive record supports a finding that EMC engaged in several criminal and fraudulent acts including racketeering through a pattern of bribery and witness tampering.   A1042.   Under the Fifth's Circuit

---

[5] EMC cites two cases in support of its proposition that the Court must disregard the district court's summary judgment findings—*D&D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, Civ. No. 03-1026, 2011 WL 1871110, at *15 (D.N.J. May 13, 2011) and *Newport Ltd. v. Sears, Roebuck & Co.*, Civ. No. 86-2319, 1995 WL 295297, at *1 (E.D. La. May 11, 1995)—but neither helps EMC.  In *D&D Assocs.*, the court explained that an order denying summary judgment as to plaintiff's *tort claims* did not support a separate finding of *fraud*, especially since the municipal-entity defendant at issue could not, as a matter of New Jersey law, commit the type of fraud alleged.  2011 WL 1871110, at *15.  In a sparsely-written opinion, the *Newport* court did not address whether a prior summary judgment denial was sufficient to establish a *prima facie* case of fraud.  Instead, ***after reviewing the specific documents at issue***, it found insufficient evidence to trigger the crime-fraud exception.  1995 WL 295297, at *1.   And other courts have found that surviving summary judgment on the issue of fraud is sufficient to create a *prima facie* case.  *E.g.*, *Koch v. Specialized Care Servs., Inc.*, 437 F. Supp. 2d 362, 380-81 (D. Md. 2005); *see also Freedom Trust v. Chubb Group of Ins. Co.*, 38 F. Supp. 2d 1170, 1171 (C.D. Cal. 1999) (equating denial of summary judgment to establishing a *prima facie* case for purposes of triggering the exception)

standard, the Court's summary judgment decision and the mountain of evidence set forth in the Statement of Facts above, is sufficient to meet the crime-fraud exception. EMCs' alleged evidence to the contrary is irrelevant, because the test for a *prima facie* showing is "a case which has proceeded upon sufficient proof to that stage where it will support [a] finding ***if evidence to the contrary is disregarded***." *In re Grand Jury Subpoena*, 419 F.3d at 336 (emphasis added).

Second, EMC suggests that Oasis must make a showing that each of the documents subject to the district court's production order is reasonably related to the furthering of acts that the district court—based on all of the evidence presented—found was sufficient to establish a crime or fraud under the Fifth Circuit standard. (Pet. at 16.) But Oasis has not seen the documents at issue and EMC even has refused to provide Oasis with a privilege log of the documents at issue. A6420-27. Under such circumstances, Supreme Court precedent dictates that upon "a showing of a factual basis adequate to support a good faith belief by a reasonable person" the district court may conduct an *in camera* review of the materials and may use that evidence to establish the claim that the crime-fraud exception applies. A100-101 (quoting *United States v. Zolin*, 491 U.S. 554, 572 (1989). That is what happened here. And EMC does not challenge the district court's use of *in camera* to determine which documents relate to the *prima facie* criminal/fraudulent activity. Accordingly, EMC's challenge is nothing more than a challenge to the district court's factual determination that the documents ordered to be produced were reasonably related to the furthering of the crime or fraud.

Without an intimate understanding of the factual record, including the precise timing of the events, the individuals involved, and their other communications, this Court is not well-positioned to determine whether the documents are "reasonably related" to EMC's *prima facie* criminal/fraudulent activity. Given the district court's familiarity with the facts of this case, and its unique ability to review and understand EMC's documents within the context of all of the other evidence, this Court should decline to revisit on mandamus the district court's factual determinations on the second prong of the crime-fraud exception.

EMC's efforts to explain away portions of its conduct in isolation effectively seek review of portions of Oasis' underlying RICO claims rather than the district court's discovery order. Indeed, many of the arguments it makes with respect to its conduct were not made in response to Oasis' motion to compel, and instead come directly from EMC's summary judgment brief, which seeks to dispose of Oasis RICO claims in their entirety. Although this Court should decline to engage in that review on mandamus, EMC's arguments are wrong for the following reasons.

## A. Defendants Conduct Surrounding The August 30 Agreement Demonstrates That The Purported Assignment Agreement Is Not Lawful.

EMC asks this Court to immunize it from all of the evidence showing that EMC offered the alleged co-inventors money in exchange for their testimony because EMC eventually executed a purported assignment agreement with the alleged co-inventors. This Court should decline to do so.

One important question in this case is whether the offers for payments, and

eventual payments, made by EMC to the alleged co-inventors and their attorneys were for an assignment of rights as EMC asserts, or whether they were to secure testimony. As set forth above, there is a rich factual record supporting the fact that EMC's offers for payments and eventual payments were for testimony. That evidence includes not only the testimony of the alleged co-inventors themselves, but also the EMC's course of conduct before and after the purported assignment agreement. Although EMC asserts that the sole purpose of the agreement was to obtain rights in the patents-in-suit, EMC never sought to establish those rights and never intended to establish any rights in the patents-in-suit. *E.g.*, A3344-45 at 53:19-54:12. Instead, EMC used the cooperation provision to force the alleged co-inventors to provide testimony to ***invalidate*** the patents-in-suit.

This Court has never held—in *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998) or in any other case—that it is common to pay alleged co-inventors to assist in invalidating their purported inventions. The Court should decline to immunize all cooperation provisions from claims of impropriety regardless of the factual backdrop under which those agreements are entered and the parties intentions and understanding of the purpose of the payments. Such a holding would allow parties to legitimize bribery of alleged co-inventors (and their heirs) merely by entering into a purported assignment agreement.

### B. The Co-Inventorship Claim Was The Result Of Defendants' Improper Inducements.

EMC incorrectly suggests that accepting Oasis' allegations would require a finding that documents retrieved by Mr. Campos were inauthentic. That is not the

case, because as the district court correctly noted, none of the Campos documents indicate that any of Campos, Atwood, or Byrd made a significant contribution to Mr. Crawford's invention, as required for a claim of co-inventorship.  A1030-35.  In addition, EMC is wrong with respect to the jury's finding.  EMC and its paid witnesses always argued that all three of Byrd, Campos and Atwood were co-inventors.  In fact, after having seen Atwood's and Campos' live testimony, the jury *rejected* their co-inventorship claims.

EMC also unabashedly quotes the district court's initial reaction at the pre-trial conference regarding Mr. Atwood's testimony being "an honest mistake."  Not only did the district court make that comment before being exposed to the full record, including the live testimony of Mr. Atwood himself and the significant documentary evidence that has come to light since then, but EMC neglects to bring to this Court's attention that the district court itself recently addressed EMC's misuse of its pretrial statement.  A2287-88 at 22:21-23:17 ("I think I was quoted at I think the pretrial hearing where I said something about it being an honest mistake.  Well, that's a credibility finding and it wasn't -- *I don't believe the Court was making a finding saying it was a mistake*.").   The district court's initial reaction—without the benefit of live testimony—and recent clarification of that reaction, demonstrates the danger of making determinations based on a cold and incomplete record.   Because this Court does not have access to the live witnesses or the familiarity with the evidence that the district court has, this Court should not substitute its own factual determinations for those of the district court.

Moreover, EMC does not contest that there is significant evidence demonstrating that the alleged co-inventors did not perceive that they were co-inventors at least through April of 2012. And as the district court correctly found, the evidence supports a finding that absent Defendants' improper conduct, the alleged co-inventors never would have made that claim. A9; A52-53; A72-81.

### C. Defendants Engaged In Witness Tampering.

EMC's primary argument—that "the conduct challenged by Oasis is all protected by the statutory safe harbor for bona fide legal services and cannot serve as the basis for vitiating the attorney-client privilege"—was not made below. Instead, EMC argued that Oasis was "mischaracteriz[ing] the lawyers' actions in this case" and presented additional evidence it believed supported its position. A1869-71. EMC's argument below was wrong because under Fifth Circuit precedent, a *prima facie* showing is "a case which has proceeded upon sufficient proof to that stage where it will support [a] finding *if evidence to the contrary is disregarded*." *In re Grand Jury Subpoena*, 419 F.3d at 336 (emphasis added).[6]

### CONCLUSION

Accordingly, this Court should deny EMC's Petition for Writ of Mandamus.

Dated:  September 22, 2015                    Respectfully submitted,

---

[6] EMC's statutory safe harbor argument also is incorrect for the reasons stated by Oasis in opposition to EMC's motion for summary judgment. A6583-86.

30

/s/ *Jonas R. McDavit*
Alan S. Kellman, Esq.
akellman@desmaraisllp.com
Tamir Packin, Esq.,
tpackin@desmaraisllp.com
Jonas R. McDavit, Esq.
jmcdavit@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, New York 10169
(212) 351-3400 Telephone
(212) 351-3401 Facsimile

# CERTIFICATE OF SERVICE

I hereby certify that two copies of this Answering Brief for Respondent were sent via Federal Express Next Business Day delivery to:

| | |
|---|---|
| Thomas M. Melsheimer<br>Thomas B. Walsh, IV<br>FISH & RICHARDSON P.C.<br>1717 Main St., Suite 5000<br>Dallas, Texas 75201<br>Telephone: (214) 292-4001<br>Facsimile: (214) 747-2091<br>Email: melsheimer@fr.com<br>Email: walsh@fr.com<br><br>Attorneys for Petitioners<br>EMC Corporation and Decho<br>Corporation | Josh A. Krevitt<br>Paul E. Torchia<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, NY 10166-0193<br>Tel: 1.212.351.4000<br>Fax: 1.212.351.4035<br>Email:Oasis-EMC-GDC@gibsondunn.com<br><br>Attorneys for Petitioners<br>EMC Corporation and Decho<br>Corporation |
| Chris R. Ottenweller<br>Bas de Blank<br>ORRICK, HERRINGTON &<br>SUTCLIFFE, LLP<br>1000 Marsh Road<br>Menlo Park, CA 94025<br>Telephone: 650-614-7400<br>Facsimile: 650-614-7401<br>Email: EMC_OASIS-OHSOnly@orrick.com<br><br>Attorneys for Petitioners<br>EMC Corporation and Decho<br>Corporation | Eric H. Findlay<br>FINDLAY CRAFT, LLP<br>6760 Old Jacksonville Hwy, Suite 101<br>Tyler, TX 75703<br>Telephone: (903) 534-1100<br>Facsimile: (903) 534-1137<br>Email:  efindlay@findlaycraft.com<br><br>Attorneys for Petitioners<br>EMC Corporation and Decho<br>Corporation |

| | |
|---|---|
| Matthew Lowrie<br>Kevin M. Littman<br>Beth I. Z. Boland<br>Joseph H. Jolly<br>Foley & Lardner LLP<br>111 Huntington Ave<br>Boston, MA 02199<br>Telephone:  617-342-4000<br>Fax:  617-342-4001<br>Email: BOST-File-Carbonite-<br>OasisResearch@foley.com;<br>BOST-F-Carbonite-RICO@Foley.com<br><br>Attorneys for Defendant Carbonite, Inc. | Andy Tindel<br>Andy Tindel, Attorney & Counselor at<br>Law, P.C.<br>112 East Line Street, Suite 304<br>Tyler, TX  75702<br>Telephone:  903-596-0900<br>Fax:  903-596-0909<br>Email:  atindel@andytindel.com<br><br>Attorneys for Defendant Carbonite, Inc. |

I also certify that the original and three copies were also sent via Federal Express Next Business Day delivery to:

Clerk of Court
United States Court of Appeals for the
Federal Circuit
717 Madison Place, NW
Washington, DC 20439
(202) 275-9678

On this 22nd day of September, 2015.


 /s/ Jonas R. McDavit
Jonas R. McDavit